United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9                    IN THE UNITED STATES DISTRICT COURT

10                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12
SHARPER IMAGE CORPORATION, a                    No. C 03-4426 CW
13  Delaware corporation, and ZENION
INDUSTRIES, INC., a California               ORDER GRANTING
14  corporation,                                 DEFENDANT'S MOTION
                                             FOR SUMMARY JUDGMENT
15          Plaintiffs,

16      v.

17  NEOTEC, INC., a Nevada corporation,
INDOOR PURIFICATION SYSTEMS, INC.,
18  a Utah corporation, and ASSET
MARKETING SERVICES, INC. d/b/a NEXT
19  TEN,

20          Defendants.

21  _____/

22

23      Defendant Indoor Purification Systems, Inc. (IPS) moves for

24  summary adjudication of the claims of Plaintiffs Sharper Image

25  Corporation and Zenion Industries, Inc. for patent infringement,

26  and of Defendant's counter-claim for declaratory judgment of

27  patent invalidity and non-infringement.  Plaintiffs oppose the

28  motion.  The matter was heard on May 20, 2005.  Having

considered the parties' papers, the evidence cited therein and oral argument on the motion, the Court GRANTS Defendant's motion for summary judgment.

BACKGROUND

On December 6, 1988, Zenion was issued U.S. Patent No. 4,789,801 ('801 patent).  Claim 24 of the '801 patent was not issued until January 14, 2003, after the original '801 patent was reexamined by the United States Patent and Trademark Office. The '801 patent discloses technology that purports to reduce the amount of ozone and nitrogen oxide produced by electro-kinetic transducers.  Electro-kinetic transducers purportedly convert electrical energy into the fluid flow of air by, for example, using a high voltage generator to charge positively one set of electrodes and to charge negatively another set of electrodes. Plaintiffs claim that air molecules become positively charged by interacting with the positively charged electrodes and are subsequently attracted to the negatively charged electrodes, thus creating an electro-kinetic flow of air.

Plaintiffs apply the technology described in the '801 patent in their Ionic Breeze Air Purifier product line. Plaintiffs filed their original complaint on September 30, 2003, alleging that Defendants IPS, Neotec, Inc. and Asset Marketing Services, Inc. had infringed the '801 patent as well as U.S. Patent Nos. 6,163,098 ('098 patent) and 6,176,977 ('977 patent) by making and selling the XJ-2000 ionic air purifier.  On June 10, 2004, Plaintiffs filed an amended complaint that did not include Neotec as a defendant.  Plaintiffs have since settled

2

this action with Asset Marketing Service, Inc., and IPS and Plaintiffs have settled the claims relating to the '098 and '977 patents; thus, the only remaining patent-in-suit is the '801 patent.  The only claim that Plaintiffs assert from the '801 patent is claim 24.  The Court issued its claim construction order in this case on March 21, 2005.

LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute.  Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289.  The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case.  The substantive law will identify which facts are material.  Anderson v. Liberty Lobby,

<u>Inc.</u>, 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the nonmoving party's case." <u>Celotex</u>, 477 U.S. at 325.  The moving party is not required to produce evidence showing the absence of a material fact on such issues, nor must the moving party support its motion with evidence negating the non-moving party's claim.  <u>Id.</u>; <u>see also</u> <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 885 (1990); <u>Bhan v. NME Hosps., Inc.</u>, 929 F.2d 1404, 1409 (9th Cir. 1991), <u>cert. denied</u>, 502 U.S. 994 (1991).  If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the opposing party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." <u>Bhan</u>, 929 F.2d at 1409.  A complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.  <u>Celotex</u>, 477 U.S. at 323.

Where the moving party bears the burden of proof on an issue at trial, it must, in order to discharge its burden of showing that no genuine issue of material fact remains, make a <u>prima facie</u> showing in support of its position on that issue. <u>See</u> <u>UA Local 343 v. Nor-Cal Plumbing, Inc.</u>, 48 F.3d 1465, 1471 (9th Cir. 1994).  That is, the moving party must present evidence that, if uncontroverted at trial, would entitle it to prevail on that issue.  <u>See</u> <u>id.</u>; <u>see also</u> <u>Int'l Shortstop, Inc.</u>

4

United States District Court

For the Northern District of California

1  v. Rally's, Inc., 939 F.2d 1257, 1264-65 (5th Cir. 1991).  Once

2  it has done so, the non-moving party must set forth specific

3  facts controverting the moving party's prima facie case.  See UA

4  Local 343, 48 F.3d at 1471.  The non-moving party's "burden of

5  contradicting [the moving party's] evidence is not negligible."

6  Id.  This standard does not change merely because resolution of

7  the relevant issue is "highly fact specific."  See id.

8                            DISCUSSION

9  I.   Invalidity

10      Defendant contends that claim 24 of the '801 patent, which

11 was added as a result of the patent reexamination process, is

12 invalid because it broadens the original patent.  Defendant

13 maintains that terms used in claim 24 are broader than

14 corresponding terms in claim 19; thus, claim 24 encompasses

15 apparatuses that claim 19 does not.

16      Claim 24 of the '801 patent reads, in pertinent part, as

17 follows:

18      A diode-type electrokinetic transducer comprising:
        a first array of ion emitting surfaces;
19      a second array of ion receiving surfaces . . .

20 The corresponding language of claim 19, the claim of the

21 original patent most similar to claim 24, is:

22      An apparatus for moving air comprising:
        a first array of electrodes;
23      a second array of electrodes . . .

24 Specifically, Defendant argues that an apparatus in which the

25 first array contains a single electrode with multiple ion

26 emitting surfaces would not infringe claim 19, but would

27 infringe claim 24.

28
                                5

**United States District Court**
For the Northern District of California

1    The parties agree on the applicable case law.  Under Title
2 35 U.S.C. section 305, during the reexamination process, patent
3 owners are permitted to add new claims in order to distinguish
4 the invention as claimed from prior art.  However, "[n]o
5 proposed amended or new claim enlarging the scope of a claim of
6 the patent will be permitted in a reexamination proceeding under
7 this chapter."  35 U.S.C. § 305.  Whether the scope of a claim
8 has been impermissibly broadened on reexamination is a matter of
9 claim construction, <u>Quantum Corp. v. Rodime, PLC</u>, 65 F.3d 1577,
10 1580 (Fed. Cir. 1995), and thus a question of law for the Court.
11 Under section 305, "a claim of a reissue application is broader
12 in scope than the original claims if it contains within its
13 scope any conceivable apparatus or process which would not have
14 infringed the original patent."  <u>In re Freeman</u>, 30 F.3d 1459,
15 1464 (Fed. Cir. 1994).  "A claim that is broader in any respect
16 is considered to be broader than the original claims even though
17 it may be narrower in other respects."  <u>Id.</u>  To overcome the
18 presumption that patents are valid, clear and convincing
19 evidence is required.  <u>Oakley, Inc. v. Sunglass Hut Int'l</u>, 316
20 F.3d 1331, 1339 (Fed. Cir. 2003).

21    Here, Defendant argues that Plaintiffs, in using the term
22 "surfaces" in claim 24, impermissibly broadened claim 19, which
23 uses the term "electrodes."  Defendant notes that the Court has
24 previously rejected the parties' attempts to use the terms
25 "electrodes" and "surfaces" interchangeably.  <u>See</u> Claim Constr.
26 Order at 10.  Defendant contends that claim 19, which uses the
27 phrase "first array of electrodes," and thus encompasses only a

6

first array consisting of multiple electrodes, would not encompass an array that included only one electrode with multiple ion emitting surfaces.  Conversely, Defendants argue, claim 24 would encompass such an apparatus.  Thus, Defendant maintains, under <u>Freeman</u>, claim 24 contains within its scope an apparatus not contained within claim 19.

In evidentiary support of its argument, Defendant points to the XJ-202, which is another in its line of ionic air purifiers, and is the subject of separate litigation between these parties. Defendant maintains that the first array in the XJ-202 is a single electrode with multiple points, or surfaces.  This apparatus, argues Defendant, would not infringe claim 19, but, in the other litigation, Plaintiffs are claiming that it infringes claim 24.

Plaintiffs rely upon two arguments that claim 24 does not broaden the '801 patent.  First, Plaintiffs contend that claim 24 is narrower than claim 19 because claim 24 describes a "diode-type electrokinetic transducer," whereas claim 19 describes only a generic "apparatus."  Thus, according to Plaintiffs, claim 24 does not encompass transducers that are not diode-type, whereas claim 19, because of its broader language, does.  Second, Plaintiffs argue that the first array in the XJ-202 actually does fall within the scope of claim 19 because the points on the first array "act as separate electrodes."

Plaintiffs' arguments are not persuasive.  First, as Defendant notes, it is irrelevant whether claim 24 is narrower than the original claims in <u>some</u> respects.  <u>See</u> <u>Freeman</u>, 30 F.3d

at 1464.  The critical inquiry is whether the newly-added claim is broader in <u>any</u> respect than the original patent.  As to Plaintiffs' second argument, the <u>Freeman</u> test is whether there is any <u>conceivable</u> apparatus that is contained within the scope of claim 24, but not within the original claims of the '801 patent.  Here, Plaintiffs offer no argument or evidence to contradict Defendant's assertion that an apparatus containing a first array with a single electrode would fall within the scope of claim 24, but not claim 19.  Defendant submits the XJ-202 as evidence of just such an apparatus.  Plaintiffs do argue that the Court should not consider a product not in suit in assessing the scope of claim 24.  Critically, however, Plaintiffs do not, and presumably cannot, argue that the <u>Freeman</u> test has not been satisfied here.

For the foregoing reasons, and notwithstanding Defendant's burden to show invalidity by clear and convincing evidence, there is no dispute of material fact that claim 24 of the '801 patent is invalid.  <u>See</u> <u>Monarch Knitting Mach. Corp. v. Sulzer Morat GMBH</u>, 139 F.3d 877, 881 (Fed. Cir. 1998).  Defendant is entitled to summary judgment on Plaintiffs' infringement claim, and to declaratory judgment of patent invalidity.

II.  Infringement

Defendant also argues that the XJ-2000 does not, as a matter of law, literally infringe claim 24 of the '801 patent.

A limitation in claim 24 of the '801 patent reads, in pertinent part, as follows:

the distance between any two adjacent ion emitting surfaces

8

**United States District Court**

For the Northern District of California

1       in the first array being substantially equal to the distance
2       between any two adjacent ion receiving surfaces in said
      second array . . .

3 In the March 21, 2005 claim construction order, the Court held

4 that, "because claim 24 contemplates one particular 'distance'

5 that separates adjacent surfaces . . . The Court construes 'the

6 distance' to mean 'the length of space.'"  Claim Constr. Order

7 at 26-27.  In addition, the Court construed the term "any" to

8 mean "each and every," and the term "adjacent" to mean "next to

9 one another."  Claim Constr. Order at 27-28.  Thus, claim 24

10 encompasses only those apparatuses in which the distance between

11 each and every adjacent surface in the ion emitting array is

12 substantially similar to the distance between each and every

13 surface in the ion receiving array, and in which there is one

14 particular distance separating each and every adjacent surface.

15      Defendant submits evidence that the XJ-2000's first array

16 consists of adjacent ion emitting surfaces, which are shaped

17 like pins, that are separated by several distinct distances.

18 The sixteen pins in the first array are organized into two rows

19 and eight columns.  The distance between adjacent pins in each

20 row is different than the distance between adjacent pins in each

21 column.  And, the rows are each divided in half by a single

22 plastic divider such that there are four columns on each side of

23 the divider.  Defendant submits additional evidence that, in the

24 XJ-2000's second array, the ion receiving surfaces are three

25 plates that are not separated by a single distance.  The three

26 plates are positioned parallel to one another, but the two

27 outside plates each curve inward at their ends to meet the

28

middle plate.  In short, the distance separating adjacent plates in the second array is different at each point in the curve than it is in the middle.

In response, Plaintiffs argue that the XJ-2000 actually has four first arrays of ion emitting surfaces; each array consists of four pins from a row on one side of the plastic divider. Plaintiffs note that each adjacent pin in these groupings of four is separated by a single distance.  In their papers, Plaintiffs did not address Defendant's evidence that the three surfaces in the second array of ion receiving surfaces are separated by different distances.

Plaintiffs offer no persuasive argument as to why the first array in the accused device, the electrode pins which are all connected to the same power source, should be considered four first arrays.  Using Plaintiffs' reasoning, they would be permitted to define an array as any arbitrary collection of ion emitting surfaces in an apparatus, thereby effectively reading out claim 24's limitation requiring that the distance between any two adjacent ion emitting surfaces in an array be the same. Moreover, as Defendant notes, Plaintiffs' current argument contradicts its final infringement contention: "The XJ-2000 includes an arrangement of surfaces for giving off ions.  The surfaces consist of <u>two</u> physically separate banks of pin electrodes, each bank defining an array."  Even accepting as true Plaintiffs' final infringement contention, the XJ-2000's first array of electrode pins cannot be separated into two distinct groups in which each adjacent pin is separated by a

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

single distance.  As Defendant notes, in the two-array scenario, either the sixteen pins are divided into two arrays by the plastic divider, in which case the distance between adjacent pins in the same row is different than the distance between adjacent pins in different rows, or each array consists of one row, in which case the distance between adjacent pins on either side of the plastic divider is different than the distance between the two adjacent pins separated by the plastic divider.

In addition, even if all adjacent electrode pins in the XJ-2000's first array were separated by a single distance, there is not one single distance separating the electrode plates in the second array.  The ends of the two outside plates each curve inward toward the middle plate; thus, as the two outside plates curve inward, the distance between those plates and the adjacent middle plate gets increasingly smaller.  Plaintiffs argued for the first time at the May 20, 2005 hearing that the end portions of the two outside electrode plates are not part of the second array.  However, Plaintiffs have submitted no evidence to support this argument.  There is not one distinct distance separating adjacent ion receiving surfaces in the XJ-2000's second array.

For the foregoing reasons, the Court rules that, as a matter of law, the XJ-2000 does not literally infringe claim 24 of the '801 patent.

III.      Doctrine of Equivalents

Defendant also asserts that the XJ-2000 does not infringe the '801 patent under the doctrine of equivalents.

11

United States District Court

For the Northern District of California

1    The doctrine of equivalents generally applies where the

2   differences between an element of the accused product and the

3   asserted claim limitation are "insubstantial to one of ordinary

4   skill in the art." <u>Searfoss v. Pioneer Consol. Corp.</u>, 374 F.3d

5   1142, 1150 (Fed. Cir. 2004).  However, the doctrine may not be

6   invoked, and summary judgment of non-infringement is

7   appropriate, where the theory of equivalents "would entirely

8   vitiate a particular claim element."  <u>Id.</u> at 1150-51 (internal

9   citations omitted).

10    Here, Defendant argues that the XJ-2000 is not equivalent

11   to claim 24.  That is true, according to Defendant, because the

12   XJ-2000 cannot infringe the '801 patent where there is not a

13   single distance between the adjacent surfaces in its first and

14   second arrays.  To rule otherwise would, Defendant notes,

15   impermissibly vitiate claim 24's distance limitation.

16    Defendant is correct that a theory of equivalents that did

17   not require a single distance between adjacent surfaces in the

18   first and second arrays would read claim 24's distance

19   limitation out of the claim.  Moreover, Plaintiffs have not, in

20   their papers or at the hearing, asserted any theory of

21   equivalents, nor have they disputed Defendant's argument on this

22   issue.  The accused product does not infringe the '801 patent

23   under the doctrine of equivalents.

24    For the foregoing reasons, the Court rules that, as a

25   matter of law, the XJ-2000 does not infringe claim 24 of the

26   '801 patent under the doctrine of equivalents.  Defendant is

27   entitled to summary judgment of patent non-infringement and

28

1   declaratory judgment of non-infringement.

2   IV.   Time Period for Damages

3        The parties argue about the appropriate time period for
4   which Plaintiffs may seek infringement damages.  However,
5   because the Court rules that (1) claim 24 of the '801 patent is
6   invalid, and (2) the accused product does not, as a matter of
7   law, infringe the '801 patent, there is no need to consider this
8   issue.

9   V.   Defendant's Counterclaims

10       Defendant has asserted counter-claims for declaratory
11   judgment that (1) Defendant has not infringed the '801 patent,
12   (2) the '801 patent is invalid, and (3) the '801 patent is
13   unenforceable due to prosecution laches.  Defendant acknowledges
14   that its counterclaim for unenforceability is moot in light of
15   the Court's ruling on its summary judgment motion.  Thus, this
16   counterclaim for declaratory judgment of non-infringement of the
17   '801 patent is dismissed without prejudice.

18   VI.   Remaining State Law Claims

19       Although Plaintiffs' claim for infringement of the '801 is
20   summarily adjudicated in favor of Defendant, Plaintiffs have
21   also alleged State law causes of action for (1) false
22   advertising, and (2) unfair competition.  These claims are not
23   addressed in Defendant's motion for summary judgment.  However,
24   at the May 20, 2005 hearing, Plaintiffs stipulated to dismiss
25   their State law claims without prejudice to refiling in State
26   court in the event the Court granted Defendant's summary
27   judgment motion.  Thus, Plaintiffs' claims for false advertising

28

13

**United States District Court**
For the Northern District of California

1    and unfair competition are dismissed without prejudice.

2    VII.      Motion to Amend Case Management Order

3         On May 6, 2005, Plaintiffs filed a motion to amend the

4    Court's case management scheduling order.  In light of the

5    Court's order granting Defendant's motion for summary judgment,

6    Plaintiffs' motion to amend the case management order is denied

7    as moot.

8                           CONCLUSION

9         For the foregoing reasons, Defendant's motion for summary

10   judgment of patent non-infringement (Docket No. 88) is GRANTED.

11   The Court also GRANTS Defendant summary judgment on its counter-

12   claims for declaratory judgment of patent non-infringement and

13   of patent invalidity.  Defendant's remaining counter-claim and

14   Plaintiffs' State law claims are dismissed without prejudice.

15   Plaintiffs' motion to amend the case management order (Docket

16   No. 102) is DENIED as moot.

17        IT IS SO ORDERED.

18

19

     Dated: 6/3/05                    /s/ CLAUDIA WILKEN
20                                     CLAUDIA WILKEN
                                       United States District Judge
21

22

23

24

25

26

27

28                                    14

**United States District Court**
For the Northern District of California